THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | |
| ONE (1) SILVER IPHONE WITH IMEI 352019078245440; | Magistrate No. 22-494 |
| ONE (1) SILVER IPHONE SE WITH IMEI 353792083688825; | Magistrate No. 22-495 |
| TWO (2) BLACK VERIZON SAMSUNG MODEL SM-B311V CELL PHONES; AND | Magistrate No. 22-496 |
| ONE (1) BLUE VERIZON KYOCERA FLIP PHONE | Magistrate No. 22-498 |
| ALL CURRENTLY IN THE CUSTODY OF THE FBI PITTSBURGH FIELD OFFICE, 3311 E. CARSON STREET, PITTSBURGH, PA 15203 | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANTS**

1. I, Eric C. Goucher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

2. I am a Special Agent ("SA") of the United States Department of Justice, Federal Bureau of Investigation ("FBI"). As a Special Agent with the FBI, I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am also a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.

3. I have been employed by the FBI since April 2015. Since joining the FBI, I have been assigned to investigative units in the Western District of Pennsylvania dealing with organized crime, drug trafficking, gangs, and violent crimes. I am currently assigned to the FBI's

Transnational Organized Crime Western Hemisphere Task Force, which investigates organizations involved in drug trafficking offenses throughout Western Pennsylvania and elsewhere.

4. I received extensive training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches and the legal requirements for the interception of telephone communications.

5. I have also been involved in narcotics related arrests and the execution of search warrants which resulted in the seizure of narcotics. I have assisted in the supervision of activities of informants who provided information and assistance resulting in drug buys.  During the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses, conducting physical surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing pen register data, conducting court-authorized wire and oral interception electronic surveillance, and preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, contraband, and evidence of criminal activity.

6. This Affidavit is submitted in support of a search warrant for a silver in color Apple iPhone with IMEI 352019078245440 ("**TARGET DEVICE 1**"); a silver in color iPhone SE with IMEI 353792083688825 (**"TARGET DEVICE 2"**); a blue in color Verizon Kyocera flip phone ("**TARGET DEVICE 3**"); and two black in color Samsung Verizon SM-B311V cell phones (**"TARGET DEVICES 4 and 5"**) (hereinafter **TARGET DEVICES**), which are further

described in ATTACHMENT A. The **TARGET DEVICES** are associated with Duane CASH, JR, the target of an FBI Organized Crime Drug Enforcement Task Force ("OCDETF") investigation which led to a Title III and approximately indictments in 2019 of approximately twenty individuals, including CASH, JR. A month prior to your affiant's involvement began in this investigation, CASH, JR was arrested following execution of a search warrant at a house he was residing at with the main target of the investigation.

7. Your Affiant has participated in the investigation outlined herein, reviewed information obtained from law enforcement and commercial databases, and discussed this case with, and reviewed the reports of, other law enforcement officers who have been involved in this investigation or who have investigated CASH, JR.

8. This Affidavit is being submitted for the limited and specific purpose of supporting an application for a search warrant. Therefore, your Affiant has not included every fact known to him concerning the investigation.

## SEARCH LOCATIONS

9. Search Location 1, further described in ATTACHMENT A, is **TARGET DEVICE 1**: One (1) Silver iPhone with IMEI 352019078245440, seized by law enforcement from CASH, JR's residence pursuant to a search warrant.

10. Search Location 2, further described in ATTACHMENT A, is **TARGET DEVICE 2**: One (1) Silver iPhone SE with IMEI 353792083688825, seized by law enforcement from CASH, JR's bedroom pursuant to a search warrant.

11. Search Location 3, further described in ATTACHMENT A, is **TARGET DEVICE 3**: One (1) Blue Verizon Kyocera flip phone, seized by law enforcement from CASH, JR's bedroom pursuant to a search warrant.

12. Search Locations 4 and 5, further described in ATTACHMENT A, are **TARGET DEVICES 4 and 5**: Two (2) Black Verizon Samsung SM-B311V cellular telephones.

13. The **TARGET DEVICES** have been in secure law enforcement custody since the time of recovery. Based on my training and experience, I know that the devices are in substantially the same state as they were when the devices first came into the possession of law enforcement.

14. Also, in correspondence with an expert in the analysis of cellular telephones, that expert indicated that it was likely that he could recover data off of the cellular telephones despite that fact that they have been in secure law enforcement storage for nearly four years.

## PROBABLE CAUSE

15. On December 7, 2018, pursuant to a search warrant issued in the State of Pennsylvania for CASH, JR's residence, narcotics officers with the PA Office of Attorney General, along with local detectives, executed the state warrant. Upon arrival at CASH, JR's residence, officers encountered CASH, JR exiting a first-floor bedroom and detained him without incident. As a result of the search, the following items were seized from CASH, JR's bedroom: **TARGET DEVICES 2, 3, 4, 5**; approximately 200 bricks of heroin/fentanyl; multiple baggies of wholesale amounts of heroin/fentanyl and cocaine; a stolen .45 handgun; pieces of indicia for CASH, JR; over $6,000 in cash co-located with some of the drug evidence; large quantity of drug paraphernalia and packaging materials. A search of another bedroom in the house resulted in the seizure of **TARGET DEVICE 2** and approximately $16,000 in cash. Accordingly, there is probable cause to believe that a search of these cellular telephones will produce fruits of, or evidence of, violations of Title 21, United States Code, Sections 841(a)(1) and 846. These statutes prohibit the distribution of illegal narcotics.

### EVIDENCE COMMONLY GENERATED BY DRUG-TRAFFICKING AND ELECTRONIICALLY STORED IN CELLULAR TELEPHONES

16. Your Affiant is aware, based upon my training and experience, that the following kinds of evidence have been recovered in a substantial number of cellular telephone searches executed in connection with drug trafficking investigations:

    a. Contact lists, including telephone numbers and names associate with those numbers;

    b. Incoming and outgoing call logs;

    c. Incoming and outgoing text messages, including draft text messages;

    d. Photographs; and,

    e. Video.

17. Based upon your Affiant's training and experience, as well as the collective knowledge and experience of other agents and officers associated with this investigation, your Affiant is aware that it is common practice for drug traffickers to routinely utilize telephones, cellular phones, prepaid phones, calling cards, public telephones, text messaging, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from detection by law enforcement. Moreover, it is not unusual for them to initiate such cellular or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. These individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances and for arranging the disposition of proceeds derived from the sale of controlled substances.

18.     Evidence of drug crimes can be found in electronic media such as cellular phones. Such evidence can include internet searches for drug-related paraphernalia, addresses, telephone numbers and contacts, as well as incriminating communications via emails, instant messages, or text messages.  It should be noted that, with the advance of technology, the distinction between computers and cellular phones is quickly becoming less clear.  Actions such as internet searching or emailing, in addition to calling and text messaging, can now be performed from many cellular phones.  In addition, those involved in drug trafficking crimes commonly communicate using multiple cellular phones and computers.  Contemporaneous possession of multiple cellular phones is, therefore, evidence of drug trafficking.  Moreover, the particular numbers of and the particular numbers dialed by particular cellular phones can be evidence of drug trafficking, particularly in a case involving the interception of communications between drug traffickers.  Such numbers can confirm identities of particular speakers and the occurrence of certain events.  As with most electronic/digital technology items, communications made from an electronic device, such as a cellular phone, are often saved or stored on the device.

19.     Your Affiant's awareness of these drug trafficking practices, as well as your Affiant's knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following:  a) your Affiant's involvement in prior drug investigations and searches during his career, as previously described; b) your Affiant's involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised your Affiant of when relating the substance of their similar debriefings and the results of their own drug investigations; c) discussions with members of the FBI and/or other federal, state, and local law enforcement officers, both about the

facts of this case in particular and about trafficking in general; and d) other intelligence information provided through law enforcement channels.

## CONCLUSION

20. Based upon all of the foregoing, there is probable cause to conclude that, in the Western District of Pennsylvania and beyond, CASH, JR has engaged in a conspiracy to distribute and possess with the intent to distribute fentanyl and other types of narcotics in violation of Title 21, United States Code, Sections 841(a)(1) and 846. There is probable cause to believe that evidence of these crimes will be found upon searching the **TARGET DEVICES**.

21. Based upon the foregoing, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **TARGET DEVICES**, as described more fully in Attachment A, to seek the items described in Attachment B.

22. The above information is true and correct to the best of my knowledge, information and belief.

*s/Eric Goucher*
ERIC GOUCHER
Special Agent, FBI

Sworn and subscribed before me, by telephone
pursuant to Fed.R.Crim.P. 4.1(b)(2)(A)
this 25th day of March, 2022.

_____
HONORABLE PATRICIA L. DODGE
United States Magistrate Judge

## ATTACHMENT A

*Items to Be Searched*

One (1) Silver iPhone with IMEI 352019078245440; one (1) Silver iPhone SE with IMEI 353792083688825; one (1) Blue Verizon Kyocera flip phone; and two (2) Black Verizon Samsung SM-B311V cellular telephones. These phones were lawfully obtained by law enforcement during the execution of a search warrant in Penn Hills, PA on December 7, 2018. The devices are currently in the custody of the FBI Pittsburgh Field Office, 3311 E. Carson Street, Pittsburgh, PA 15203.

**ATTACHMENT B**

*Items to Be Seized*

All records, fruits, and evidence described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846, including those items described in Section I below.

**SECTION I**

1. Records relating to the distribution of controlled substances, travel for the purpose of acquiring and/or distributing controlled substances, and to monetary transactions involving the proceeds from the sale of controlled substances;

2. Names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances and the criminal use of communication facilities;

3. Records indicating travel in interstate and foreign commerce, such as maps, GPS coordinates, navigation coordinates, travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills and related communications;

4. Records which provide evidence of control or ownership of the communication device;

5. Records related to acquiring and distributing illegal drugs and proceeds, including incoming and outgoing call and text message logs, contact lists, photo and video galleries, sent and received text messages, online searches and sites viewed via the internet, online or electronic communications sent and received (including email, chat, and instant messages), sent and received audio files, navigation, mapping, and GPS files, telephone settings (including contact lists), and

9

related identifying information such as telephone identification numbers, call forwarding information, messages drafted but not sent, and voice messages;

      6.      Any documentation, operating logs and reference manuals regarding the operation of the storage devices;

      7.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the storage devices or data to be searched;

      8.      Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the storage devices or data;

      9.      Any passwords, password files, test keys, encryption codes or other information necessary to access the storage devices or data.

The examination of electronic information may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium, which might expose many parts of the CASH, JR devices to human inspection in order to determine whether it is evidence described in the warrant.